UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAHNEEN SLANTIS, | : | |
|     Plaintiff | : | NO.: 1:09-CV-00049-CCC |
| | : | |
| v. | : | (JUDGE CONNER) |
| | : | (MAGISTRATE JUDGE PRINCE) |
| CAPOZZI & ASSOCIATES, P.C., | : | |
|     Defendants | : | |

## **REPORT AND RECOMMENDATION**

Pursuant to an Order entered on August 2, 2010 (Doc. 70), Honorable Christopher Conner referred plaintiff's pending motion for summary judgment and defendant's pending motion for partial summary judgment to the undersigned Magistrate Judge.

## **I. Background**

This case is an offshoot from a dispute between plaintiff Lahneen Slantis and her employer, Advanced Center for Infertility & Reproductive Medicine (the Center). The Center had hired defendants Capozzi & Associates, P.C. (C&A), to represent them in the Center's dispute with Slantis; in the course of this representation, C&A obtained a consumer report on Slantis from Equifax, an act that launched this case now before the Court. Slantis claims that the Equifax credit check violated her rights under the Fair Credit Reporting Act (FCRA), 15 U.S.C.A. §§ 1601–1693r (West 2010); C&A counterclaimed, contending that not only was the credit check permissible, but Slantis's claim to the contrary was made in bad faith or for the purpose of harrassment, and that C&A is therefore entitled to a statutory award of damages.

*(A) Facts of the case*

The facts as presented are not in dispute, unless otherwise noted. Plaintiff Lahneen Slantis was an employee of the Advanced Center for Infertility & Reproductive Medicine up until January 19, 2007. (Doc. 40, ¶ 3; Pl.'s Dep. (Doc. 40-2) 11:17–18, Feb. 12, 2010). Not later than December 12, 2007, Slantis retained an attorney to help her bring a claim against the Center. (Doc. 42, ¶ 68.) This attorney, Frank Clark, wrote a letter to Dr. Eric Fiedler, a physician and Slantis's supervisor during her employment at the Center. (*Id.* ¶ 69; Doc. 40-4.) The letter raised potential claims against the Center arising from Slantis's former employment. (Doc. 42, ¶ 70). Dr. Fiedler then retained Capozzi & Associates to evaluate and respond to the letter. (*Id.* ¶ 71.)

In reviewing the letter from Clark, C&A came to believe that the letter contained defamatory statements about Dr. Fiedler that would subject Slantis to a counterclaim in the event that she filed suit. (Doc. 40, ¶ 3; Eisemann Dep. (Doc. 40-3) 18:11–21, Feb. 12, 2010). Louis Capozzi, Esq., of Capozzi & Associates, had associate attorney Andrew Eisemann perform an "asset search" on Slantis to determine whether she had "any assets that would be worth pursuing" through a counterclaim. (Capozzi Dep. (Doc. 40-5) 18:25–19:12.)

Part of Eisemann's asset search was obtaining Slantis's consumer report with Equifax on December 24, 2007. (Doc. 42, ¶ 76.) Capozzi & Associates did not have Slantis's permission to access her consumer file. (*Id.* ¶ 77; Doc. 50, ¶ 77.) Neither Louis Capozzi, one of the name partners of C&A, nor Andrew Eisemann did any research to determine whether their stated purpose for obtaining Slantis's credit report was permissible under the FCRA; nor did anyone else at C&A do such research. (Doc. 42, ¶¶ 91–93; Capozzi Dep. 19:23–20:5; Eisemann Dep. 24:5–14, 37:17–38:3.)

*(B) Procedural history*

Plaintiff Slantis filed the complaint in this case (Doc. 1) on January 9, 2009. Defendant filed its answer and counterclaim (Doc. 6) on February 2, 2009. Slantis answered the counterclaim on March 16 (Doc. 13). On May 15, 2009, Slantis moved to disqualify defendant's counsel (Doc. 17), which was granted by order of the Court on August 20, 2009 (Doc. 29). Defendant filed a motion to disqualify plaintiff's counsel on July 6, 2009 (Doc. 21), but on August 4, 2010, this motion was deemed withdrawn by order of the Court (Doc. 71) for defendant's failure to file a supporting brief.

On March 1, 2010, both parties filed dispositive motions: plaintiff's motion sought summary judgment (Doc. 38) and defendant's sought partial summary judgment (Doc. 39). Plaintiff properly filed a statement of facts (Doc. 42) and a brief in support (Doc. 43), as did defendant (Docs. 40, 41). Both parties have filed answers to each others' statement of facts (Docs. 50, 51) as well as briefs in opposition (Docs. 49, 53) and reply briefs (Docs. 60, 61).

Meanwhile, on June 16, 2010, plaintiff filed a motion in limine, seeking to exclude evidence on a variety of specific points and subjects. After briefing from both parties (Docs. 64, 67, 69), the Court granted plaintiff's motion in full on August 9, 2010 (Doc. 72).

All nondispositive motions have now been addressed and resolved; the parties' motions for summary judgment are now ripe for adjudication.

**II. Standard of Review**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the

4

nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

**III. Discussion**

Plaintiff has moved the court to summarily find that defendant Capozzi & Associates, P.C. willfully violated the Fair Credit Reporting Act by obtaining plaintiff's consumer report without a permissible purpose, causing plaintiff to suffer actual damages, and further, that defendant has failed to show that plaintiff's complaint was filed in bad faith or for the purpose of harrassment. Defendant, by contrast, seeks judgment in its favor solely on the matter of willfulness; they urge that plaintiff has failed to establish that defendant acted willfully in violating the FCRA.

In order to establish a violation of the FCRA for obtaining a credit report without a legitimate business need, plaintiff must prove that (1) there was a consumer report; (2) defendant used or obtained it; (3) defendant did so without a permissible statutory purpose; and (4) defendant was negligent or willful in so doing. *Phillips v. Grendahl*, 312 F.3d 357, 364 (8th Cir. 2002), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). Because there is no dispute that there was a consumer report and that defendant obtained it, disputes in this case are genuine only if they relate to one of the two remaining elements: defendant's purpose in obtaining the report and whether defendant was negligent or willful.

*(A) Purpose in obtaining the consumer report*

Defendant has offered two reasons for obtaining the report: first, to determine whether a counterclaim in a suit between plaintiff and defendant's client "would be financially worth raising" (Doc. 49, at 5), and second, "because of a concern about the

5

responsibility [that plaintiff's employer had] with regard to [p]laintiff's consent order with the Department of Nursing" (*id.* at 6). (*See also* Capozzi Dep. (Doc. 40-5) 18:25–19:12 (explaining why defendant obtained the report).) However, neither of these two reasons constitutes a "legitimate business need" under the FCRA. The only possible section of the FCRA that would legitimize defendant's access in this case is 15 U.S.C.A § 1681b(a)(3)(F)(i), which allows consumer reports to be furnished "in connection with a business transaction that is initiated by the customer." Defendant has not cited, and the Court cannot find, any case that has held obtaining a consumer report permissible under this section based on analogous facts or comparable ostensible purposes.

Defendant did cite a handful of cases that purportedly held obtaining consumer reports permissible under § 1681b(a)(3)(F)(i) for the purpose of preparing for litigation, but every one of those cases is readily distinguishable. In one case decided prior to the 1996 FCRA amendments, the court was considering a credit report obtained in the course of an underlying case about debt collection on a contract. *Korotki v. Thomas, Ronald & Cooper, P.A.*, No. 96-1877 1997 WL 753322, at *2 (4th Cir. Sept. 29, 1997), *aff'g Korotki v. Attorney Servs. Corp.*, 931 F. Supp. 1269 (D. Md. 1996). The court held that use of the credit report to find an alternate address at which to serve the appellant was a legitimate business need. *Id.* The case at bar is unlike *Korotki* both factually and legally: here, the underlying case is about an employment dispute, not debt collection, and the credit report was being used only to find out if plaintiff could pay a judgment against her, not to facilitate service of process. Further, *Korotki* was decided under a substantively different legal standard. The 1996 FCRA amendments imposed a stricter standard under the "legitimate business need" rule than had been in effect previously. Prior to 1996, a person could obtain a consumer's credit report for a "legitimate business need for the information in connection with a business transaction *involving* the consumer." Pub.L. No. 90-321, Title IV, § 604, as amended Pub.L. 91-508, Title VI, § 601, 84 Stat. 1129

6

(codified as 15 U.S.C. § 1681b(3)(E)) (Oct. 26, 1970) (emphasis added). In 1996, the language was changed, allowing credit reports to be furnished for a legitimate business need "in connection with a business transaction that is *initiated by* the consumer." 15 U.S.C.A. § 1681b(a)(3)(F)(I) (West 2010) (emphasis added); *see Cappetta v. GC Servs. Ltd. P'ship*, 654 F. Supp. 2d 453, 459 (E.D. Va. 2009) (reviewing the change in the FCRA standard).

Another distinguishable case involved a credit report accessed in the context of the plaintiff's dealings with a debt-consolidation company. *Minter v. AAA Cook County Consolidation, Inc.*, No. 02-C-8698, 2004 WL 1630781, at *1 (N.D. Ill. July 19, 2004). In supporting its statement, made in dicta, that preparation for litigation constitutes a legitimate business need, the *Minter* court cited an unpublished trial-court opinion decided before the 1996 FCRA amendments. *Id.* (quoting *Allen v. Kirkland & Ellis*, No. 91-C-82721, 1992 WL 206285, at *2 (N.D. Ill. Aug. 17, 1992)). Defendant has also cited *James v. Interstate Credit Collection, Inc.*, No. 03-CV-1037, 2005 WL 1017819, at *1–2 (E.D. Pa. Apr. 28, 2005), to support its position. However, *James* not only relied on *Minter*—an unpersuasive authority on the question at hand—but the consumer report in *James* was obtained to determine whether a specific disputed debt had been removed from the plaintiff's credit report, quite unlike the employment-dispute context in the case at bar.

Moreover, case law from the Third Circuit and elsewhere affirmatively supports the proposition that obtaining a consumer report in preparation for litigation is not a legitimate business need. *E.g.*, *Houghton v. N.J. Mfrs. Ins. Co.*, 795 F.2d 1144, 1149 (3d Cir. 1986) (narrowly construing the statutory predecessor to § 1681b(a)(3)(F)(i), and requiring that a "consumer relationship" exist between the party requesting the report and the subject of the report); *Mone v. Dranow*, 945 F.2d 306, 308 (9th Cir. 1991) (defendant

obtained credit report to determine whether plaintiff had sufficient assets to pay a judgment; held impermissible under statutory predecessor to § 1681b(a)(3)(F)(i)).

Even were defendant to prove that its purposes were, in fact, what it claimed them to be, they would still be impermissible under the statute.

Because there is no factual dispute as to what defendant's purposes were in obtaining plaintiff's consumer report, and those purposes are not statutorily permissible, summary judgment is appropriate for plaintiff on this point.

### (B) Negligence and willfulness

Plaintiff seeks a ruling that defendant was willful in its impermissible access of plaintiff's consumer report; defendant seeks a ruling that it was not willful, which would allow the case to proceed on the question of negligence alone.

Whether defendant was willful or negligent determines what remedies are available to plaintiff. For a negligent violation, a plaintiff may recover actual damages, litigation costs, and reasonably attorney's fees. 15 U.S.C.A. § 1681*o* (West 2010). For a willful violation, a plaintiff may recover any actual damages, or damages of at least $100 or as much as $1000; or the greater of $1000 and actual damages, as well as punitive damages, litigation costs, and reasonable attorney's fees. *Id.* § 1681n.

Prior to 2007, § 1681n's willful-noncompliance provision applied only if a defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997) (quoting *Philbin v. Trans Union Corp.*, 101 F.3d 957, 970 (3d Cir. 1996)). However, in 2007, the Supreme Court lowered the bar for what constitutes willful noncompliance, which now includes both knowing and reckless violations. *Safeco Ins. Co. of Am. v. Burr*,

551 U.S. 47, 56–57 (2007) (citing, e.g., *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132–33 (1988)).

As a general matter, the question of whether an actor is negligent, reckless, or willful is a question about the actor's state of mind, which is a highly fact-specific question best left to the jury. *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993) (citing *Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 23 (3d Cir. 1985)) ("Summary judgment is inappropriate when a case will turn on . . . state of mind."). *See also, e.g., Rodgers v. McCullough*, 296 F. Supp. 2d 895, 902 (W.D. Tenn. 2003) (citing *Wilson v. Seiter*, 893 F.2d 861, 866 (6th Cir. 1990)) (noting that state of mind, in a FCRA case, "is an issue best left to a jury"); *Wilson*, 893 F.2d at 866 (citing Wright, Miller, & Kane, *Federal Practice and Procedure: Civil 2d* § 2730 (1983)) (noting that state of mind is typically improper for resolution on summary judgment); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) ("Issues such as intent and credibility are rarely suitable for summary judgment.").

In this particular case, little undisputed evidence bears on the issue of state of mind. The record reveals that Capozzi & Associates made no attempt to determine whether obtaining plaintiff's consumer report would be permissible under the FCRA. This instance of nonfeasance could support a reasonable inference of negligence, recklessness, or willfulness, but on summary judgment, it is hardly conclusive enough to merit judgment as a matter of law for either party.

### (C) Defendant's counterclaim

Defendants counterclaim in this dispute, urging the court to find that plaintiff's complaint was filed in bad faith or for the purposes of harrassment. However, the analysis in Part III.A above shows that plaintiff's claim has merit. A meritless claim being a

9

prerequisite for a counterclaim of bad-faith filing to proceed, defendant's counterclaim necessarily fails.

**IV. Conclusion**

It is recommended, therefore, that plaintiff's motion for summary judgment be GRANTED as to the matters of defendant's lack of permissible purpose under FCRA and as to defendant's failure to show that plaintiff's claim was in bad faith or for the purposes of harrassment, and DENIED as to the matter of defendant's state of mind; and that defendant's motion for summary judgment be DENIED. It is further recommended that defendant's counterclaim be DISMISSED.

<pre>
                                        s/ William T. Prince
                                        William T. Prince
                                        United States Magistrate Judge
</pre>

August 10, 2010